Argued and submitted May 16, 2000, alternative writ of mandamus dismissed
December 29, 2000

State of Oregon ex rel Kingsley CLICK,
State Court Administrator and
Phil McCollister,
Clatsop County Trial Court Administrator,
*Relators,*

*v.*

Paula J. BROWNHILL,
Circuit Court Judge of Clatsop County,
*Defendant,*

*and*

ANTHONY SCOTT GARNER,
*Adverse Party.*

(CC 98-1296; SC S46732)

15 P3d 990

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause and filed the briefs for relators. With her on the briefs were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Kaye E. McDonald, Assistant Attorney General.

Kathleen M. Correll, Portland, argued the cause and filed the brief for adverse party. With her on the brief was Mark A. Cross, Oregon City.

GILLETTE, J.

Durham, J. concurred and filed an opinion in which Kulongoski, J., joined.

**GILLETTE, J.**

In this original mandamus proceeding, the State Court Administrator and the Clatsop County Trial Court Administrator (relators) seek a peremptory writ of mandamus commanding the trial court to vacate an order that requires relators to provide certain jury lists to the defendant in a pending criminal case. For the reasons that follow, we conclude that the trial court did not err in ordering the production of those lists.

In 1998, a Clatsop County grand jury indicted Anthony Scott Garner on two counts of aggravated murder. Before the case was set for trial, Garner served relators with subpoenas *duces tecum* requesting, among other things, a number of jury-related records, including Clatsop County source lists, master lists, term lists, and individual *voir dire* lists from 1990 to the date of the subpoena. Relators filed a motion to quash those subpoenas on numerous grounds, including an assertion that relators were precluded from disclosing the jury lists under ORS 10.215(1).[1] Both parties filed further documents, and Clatsop County Circuit Court Judge Brownhill heard testimony and argument on the matter.

The trial court allowed the motion in part and denied it in part. The court's order required relators to produce master and term jury lists for Clatsop County from 1996 to 1999, lists of jurors who were summoned and who returned summons for each jury term from 1996 through 1999 in Clatsop County, various jury selection manuals, and jury studies, surveys, and statistics. In the letter announcing its ruling, the court restricted Garner's use of the jury information to purposes related to the pending litigation and prohibited Garner from contacting persons whose names were on the jury lists.

This mandamus proceeding followed. Before this court, relators challenge the trial court's order only to the extent that the order requires them to provide the three types of jury lists. The dispositive issue presented in the case is

---

[1] ORS 10.215(1) is quoted and discussed in more detail below. 331 Or at 503.

whether ORS 10.215(1), by implication, prohibits relators from providing those lists to Garner.[2]

ORS 10.215(1) provides:

> "The clerk of court shall cause to be prepared at least once each year a master jury list containing names selected at random from the source lists. The source lists are the most recent list of electors of the county, the records furnished by the Department of Transportation as provided by ORS 802.260(2) and any other sources approved by the Chief Justice of the Supreme Court *that will furnish a fair cross section of the citizens of the county. Any source list obtained from a public or private entity and any jury list containing names selected from a source list shall not be used for any purpose other than the selection and summoning of persons for service as jurors and the drawing of names of jurors.*"

(Emphasis added.) Relators contend that the last sentence of ORS 10.215(1) unambiguously defines and limits the way in which the jury lists described in the trial court's order may be "used." They assert that Garner's proposed utilization of the lists is a "use," but not one of the enumerated ones. And, they reason, because Garner would not be "using" the lists in one of the authorized ways, the statute implicitly forbids relators to provide the lists to Garner. More specifically, relators explain that "selecting and summoning" persons for jury duty are functions performed exclusively by court personnel or the sheriff and that neither of those functions is performed by parties to litigation. Because parties to litigation cannot put the jury lists to either of the specified statutory uses, relators conclude, the statute does not authorize disclosure of jury lists to them.

Garner responds that examining the lists to determine whether the jury pool represents a fair cross-section of the county is, in fact, using those records for the purpose of jury selection and, therefore, is a use that is permitted by the

---

[2] Because of the manner in which we resolve the statutory issue, we do not find it necessary to consider a second issue, *viz.*, whether disclosure of those documents is required under the Sixth or Fourteenth Amendments to the United States Constitution.

statute. He contends that relators construe the word "selection" too narrowly.

■■ Whether ORS 10.215(1) forbids disclosure of the jury lists in this case is a matter of statutory interpretation. In construing the statute, we use the analytical framework described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), in an effort to discern the intent of the legislature. At the first level of analysis, we examine the text and context of the statute itself, giving words of common usage their plain, natural, and ordinary meanings. *Id.* at 610-11. Analysis of the text also includes consideration of "rules of construction * * * that bear directly on how to read the text," including "the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' " *Id.* at 611 (quoting ORS 174.010). If the legislature's intent is clear from the text and context, then our analysis ends. *PGE*, 317 Or at 611.

We begin with two preliminary observations. First, we note that there is no dispute that the master and term jury lists for the years 1996 to 1999, and the lists of jurors who were served and who returned summons for each jury term from 1996 to 1999, are "jury list[s] containing names selected from a source list" as that phrase is used in ORS 10.215(1).[3] Second, although ORS 10.215(1) does not speak directly to *disclosure* of jury lists (the statute speaks, rather, in terms of the "purposes" for which those materials may be "used"), Garner does not assert that relators may disclose the materials at issue for any unauthorized "use."

■ The first question before the court, then, is the scope of the limitation on "uses" contemplated by the last sentence of ORS 10.215(1). As noted, that sentence limits the authorized purposes for which the jury lists may be used to two: the "selection and summoning" of prospective jurors and "the drawing of names of jurors."

---

[3] The source lists include "the most recent list of electors of the county" and "records furnished by the Department of Transportation as provided in ORS 802.260(2)[.]" ORS 10.215(1). A "master list" is a list, "prepared at least once each year" at the direction of the clerk of the court, "containing names selected at random from the source lists[.]" *Id.* "Term" jury lists, in turn, are composed of "names selected at random from the master jury list[.]" ORS 10.225(1).

As noted, Garner attempts to bring himself within the scope of the term "selection." He argues that, because he intends to use the jury lists to perform a statistical analysis to determine whether the grand and petit juries in his case are drawn from a jury pool that contains a fair cross-section of the citizens of the county, he will, in fact, be using the jury lists for the "selection" of jurors.

The scope of ORS 10.215 appears to be confined to the selection of the jury pool and the summoning of jurors from that pool. The term "selection," as used in ORS 10.215(1), is a part of the phrase "selection and summoning." The legislature's choice to place the word "selection" before the word "summoning" suggests that the "selection" process to which it refers is a precursor to the "summoning" process — in other words, that the statute is concerned with selecting the pool of persons who then will be summoned, before the commencement of any particular court proceeding. Relators rely on the fact that neither of those functions is one that Garner can perform. Thus, they argue, any "use" that Garner might make of the lists would exceed those authorized by the statute.

Context supports relator's reading of the scope of ORS 10.215. The statute is part of Title 1 of the Oregon Revised Statutes — the Oregon statutes devoted to the operation of courts of record. It appears in ORS chapter 10 — the chapter that regulates the manner of calling persons for jury service generally. Moreover, the statutory scheme of which ORS 10.215 is a part establishes that the jury selection and summoning functions are performed exclusively by court personnel, well before any particular case is called for trial. Under that scheme, the presiding judge for the judicial district first prescribes a jury selection system or device. ORS 10.205. The clerk of the court then prepares the master jury list. ORS 10.215(1). Next, at the direction of the presiding judge or the clerk of court, a term jury list is prepared, based on names selected randomly from the master jury list. ORS 10.225(1). Finally, the clerk of court issues summons to the persons whose names are on the term jury list. ORS 10.225(5). From the foregoing, it is clear that individual litigants take no part in the "selection and summoning" of prospective jurors or the drawing of names of jurors, processes

that are completed before any litigant comes on the scene. In terms of the present case, Garner does not become involved until after the process contemplated by ORS 10.215 has ended. He thus is not involved in the "selection" process *qua* process, and his argument in that respect fails.

■          Our disposition of Garner's assertion that he is a part of the "selection" process, however, does not end our inquiry. There remains the issue of the scope of the statute's restriction on the permissible "uses" to which the source and jury lists may be put. Is examining the source and jury lists solely for the purpose of determining whether the jury pool represents a fair cross-section of the community a prohibited use? The answer to that question is not self-evident.

"Use" means "the act or practice of using something: EMPLOYMENT." *Webster's Third New Int'l Dictionary*, 2523 (unabridged ed 1993).[4] In the broadest sense, examining the source and jury lists in an effort to assess compliance with the requirements of ORS chapter 10 is a "use," because the lists are being employed for that purpose. But, did the legislature intend that the term apply so broadly as to forbid even Garner's "use"? Context suggests that it did not.

ORS 10.215(1) deals with the selection of venire panels from which both criminal and civil petit juries are drawn. With respect to criminal juries, ORS 136.005(1) provides:

> "The district attorney or the defendant in a criminal action may challenge the jury panel on the ground that there has been a material departure from the requirements of the law governing selection of jurors."

The "requirements of law governing selection of jurors" are those found in ORS chapter 10. ORS 136.005(1) offers no explanation as to how either the district attorney or the defendant is supposed to obtain information that might justify the kinds of challenges that the statute contemplates. However, we think that it is clear that a trial court need not entertain such challenges unless they are supported by some preliminary evidentiary showing.

---

[1] The word has many other definitions, but none helpful to this inquiry.

Garner argues that the right to challenge a jury panel presupposes that a party entitled to make that challenge will have the relevant documentation necessary to prove the validity of the challenge. It follows, he reasons, that it would be inconsistent with ORS 136.005(1) to interpret ORS 10.215(1) in a manner that denies him access to the jury lists.

Garner further notes that ORS 10.205 *et seq.*, impose numerous record preservation requirements concerning the jury selection process. *See, e.g.*, ORS 10.215(6) (requiring clerk of court to preserve previously filed master lists and related papers); ORS 10.255 (requiring clerk of court to prepare and maintain records of persons summoned to appear as jurors); ORS 10.265 (requiring clerk of court to preserve all orders, records, and papers prepared in connection with selecting and summoning persons to serve as jurors for particular jury term). Garner asserts that "the import of these provisions is that Oregon litigants have access to the information necessary to press a challenge to a jury composition."

In addition to the contextual material relied on by Garner, we find one other statutory provision that supports the idea that there is no statutory prohibition to making the lists available to litigants to assist them in determining whether the jury pool and venire panel reflect a fair cross-section of the community. Respecting civil juries, ORCP 57 A provides a specific procedure for challenging compliance with jury pool and venire panel selection procedures:

"(1)   Within 7 days after the moving party discovered or by the exercise of diligence could have discovered the grounds therefor, and in any event before the jury is sworn to try the case, a party may move to stay the proceedings or for other appropriate relief, on the ground of substantial failure to comply with the applicable provisions of ORS chapter 10 in selecting the jury.

"(2)   Upon motion filed under subsection (1) of this section containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the applicable provisions of ORS chapter 10 in selecting the jury, the moving party is entitled to present in support of the motion: the testimony of the clerk or court administrator, *any relevant records and papers not public or otherwise*

*available* used by the clerk or court administrator, and any other relevant evidence. \* \* \*

"(3)  The procedures prescribed by this section are the exclusive means by which a party in a civil case may challenge a jury on the ground that the jury was not selected in conformity with the applicable provisions of ORS chapter 10."

(Emphasis added.)

The emphasized words in ORCP 57 A(2) appear to contemplate explicitly that, in a civil case, the kinds of materials that Garner seeks will be available to the challenging party to substantiate a claim of failure to comply with the requirements of ORS chapter 10. Indeed, it is difficult to imagine how a party would be able to obtain and put on such evidence, if the party were unable to subpoena it. It also is difficult to imagine that the legislature intended to give civil litigants greater access to records and papers than it gives criminal litigants.

We find the foregoing contextual materials to be decisive. Although the wording of the last sentence of ORS 10.215(1) is direct and sweeping when read in isolation, other contextual statutes contemplate that contests over the selection and summoning process will be possible, and that those involved will have access to the lists to which the statute speaks. We are satisfied that the legislature did not intend that its limitation on the "uses" to which the list could be put would sweep so broadly as to include judicial scrutiny into the selection and summoning process. We conclude, after examining text and context, that the legislature's intent respecting use of jury lists for the purposes contemplated by Garner is clear: Such a use is permissible.

In sum, we conclude that the trial court permissibly determined that "use" of the materials that it ordered disclosed to Garner would not violate the statutory prohibition. It follows that the trial court had no legal duty to grant relators' motions to quash and that our alternative writ of mandamus directing the court to do so or to show cause why it had not done so now should be dismissed.

Alternative writ of mandamus dismissed.

**DURHAM, J.,** concurring.

The majority opinion provides a rationale that is sufficient to justify dismissal of the alternative writ of mandamus in this case. The majority concludes that it is difficult to imagine that the legislature would provide the parties to a criminal action with the right to challenge the lawfulness of the selection of jurors, ORS 136.005(1), but deny them access to the clerk's source list and jury list, ORS 10.215(1), that might serve as the factual foundation for such a challenge. That rationale comports with common sense, and I join it. However, the majority's analysis does not expose completely the ambiguity that inheres in ORS 10.215(1). I will address that problem, because the legislature may wish to consider amending ORS 10.215(1) to resolve the ambiguity.

ORS 10.215(1) provides:

"The clerk of court shall cause to be prepared at least once each year a master jury list containing names selected at random from the source lists. The source lists are the most recent list of electors of the county, the records furnished by the Department of Transportation as provided in ORS 802.260(2) and any other sources approved by the Chief Justice of the Supreme Court that will furnish a fair cross section of the citizens of the county. Any source list obtained from a public or private entity and any jury list containing names selected from a source list *shall not be used* for any purpose other than the selection and summoning of persons for service as jurors and the drawing of names of jurors."

(Emphasis added.)

Ambiguity arises from the passive voice verb in the third sentence in that statute: "shall not be used." That sentence fails to identify clearly the person or entity to whom the legislature has addressed the statutory prohibition.

The passive voice flaw in the statute spawned the parties' legal dispute. On the one hand, relators argue plausibly that criminal defendants do not use source lists and jury lists to select and summon jurors. On the other hand, because the first sentence of ORS 10.215(1) directs the clerk to prepare a master jury list, the third sentence appears to state a prohibition against misuse of source lists and jury lists by the

*clerk,* and no one else. The majority opinion accepts relators' argument, but does not resolve the ambiguity noted above in ORS 10.215(1), because other statutes appear to entitle Garner to use the jury records that he seeks to challenge the jury selection in his case.

The ambiguity noted above might continue to cause problems for relators, including the prospect of additional litigation and the attendant expense. For example, the public, including the news media, cannot determine from the majority opinion whether ORS 10.215(1) authorizes relators to refuse to disclose source lists and jury lists to persons who are not criminal defendants. The legislature might wish to address the ambiguity in ORS 10.215(1) before those problems arise.

I concur.

Kulongoski, J., joins in this opinion.